UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **i.think inc.,** | § |
| | § |
|     *Plaintiff*, | § |
| | § |
| v. | §     CIVIL ACTION NO. 3-08CV0163-P |
| | § |
| **MINEKEY, INC.;** | § |
| **DELIP ANDRA; and** | § |
| **INTERNET UNLIMITED, LLC** | § |
| | § |
|     *Defendants*. | § |

### DEFENDANTS MINEKEY, INC.'S AND DELIP ANDRA'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND AND SUPPORTING BRIEF

**To the Honorable Court:**

Defendants Minekey, Inc. ("Minekey") and Delip Andra ("Andra"), file this Response to plaintiff i.think inc.'s Motion to Remand and supporting brief and show as follows:

### Diversity Jurisdiction- the Amount in Controversy Exceeds $75,000

In its Brief in Support of its Motion to Remand, plaintiff concedes complete diversity and challenges only the amount in controversy. (Plaintiff's Brief at 3). Plaintiff offers a post-removal affidavit in which it "expressly waives **damages** in an amount greater than $75,000"– but pointedly says nothing about the value of its claims for injunctive relief and attorneys' fees. The amount in controversy, however, includes not only a claim for damages but also the value of the claim for injunctive relief and the claim for attorneys' fees.

The Supreme Court has long held that "[i]n actions seeking . . . injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 337 (1977) (citing cases); *see also Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)

Dockets.Justia.com

(Easterbrook, J.) ("The [removing party's] burden . . . is to show what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court"); *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) (in an action for equitable relief the amount in controversy is "the value of the object of the litigation."). Where the "value of the object of the controversy" is unclear from plaintiff's pleadings, courts will accept "a good-faith estimate of the stakes . . . if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (citing *Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004)). "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Oshana*, 472 F.3d at 511 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

When plaintiff claims injunctive relief, the key to determining the amount in controversy is to evaluate fully the "value of the object of the litigation." Therefore, in support of its Notice of Removal defendants offered the declaration of Delip Andra, founder and CEO of defendant Minekey, regarding the value of the object of plaintiff's requested injunction – the ithink.com and ithink.net web domain names.[1] Minekey paid $95,000 to purchase the domain names and incurred another $45,000 in expenditures to market and "clear" the names. (*See* Andra Declaration attached to Notice of Removal ¶ 4)

Plaintiff incorrectly characterizes this evidence as simply defendants' "costs of compliance with an injunction" and then argues that such evidence is irrelevant to "Plaintiff's

---

[1] Indeed, not only does plaintiff seek to enjoin Minekey and Andra from using these domain names, but plaintiff even admits that its cease and desist letter sent prior to filing suit demanded that defendants "cease using 'iThink' and **transfer the domains."** (Plaintiff's Brief at 2) (emphasis added).

injury." (Plaintiff's Brief at 3)  First, the fair market value of the domain names is the same for both plaintiff and defendants.  Mr. Andra's evidence regarding the value of the two domain names does not simply represent the "cost of compliance," but instead is direct and objective evidence of the fair market value of plaintiff's object of the litigation.[2]  *See, e.g.*, *Heike v. Heike*, No. Civ. A. 6:06-CV-430, 2007 WL 1231800,*2-3 (E.D. Tex. Apr. 24, 2007) (denying motion to remand where trust account that was target of plaintiff's injunctive relief had a value well over jurisdictional limit).  This one measure alone demonstrates that the value of the injunctive relief sought by plaintiff exceeds the Court's diversity jurisdictional threshold.

Second, as Judge Posner has noted, in cases in which a single plaintiff seeks injunctive relief, the cost to a defendant of complying with an injunction "will be equivalent to the . . . value of the injunction to the plaintiff."  *See, e.g.*, *In re Brand Name Prescription Drugs*, 123 F.3d 599, 609 (7th Cir. 1997) (Posner, J.).  This is so because "the defendant would be willing to pay the plaintiff up to a shade less than the cost that the injunction would impose on the defendant to induce the plaintiff to abandon his quest for injunctive relief.  In that way the cost to the defendant would be transmuted into an equivalent value to the plaintiff." *Id.*  Accordingly, even if defendants' evidence could be characterized as "cost of compliance," in this single plaintiff case it also shows the value of the injunction to plaintiff.

Finally, the requisite amount in controversy is established by plaintiff's rejection of defendants' offer to pay more than $75,000 in exchange for a dismissal with prejudice of this action.  On February 26, 2008, defendants' counsel sent plaintiff's counsel a letter offering to

---

[2] In support of its argument that the fair market value of the domains constitutes irrelevant "cost of compliance" evidence, plaintiff cites the unpublished decision of *Sims v. AT & T Corp.*, No. Civ.A 3:04-CV-1972-D, 2004 WL 2964983 (N.D. Tex. Dec. 22, 2004).  The evidence submitted by the defendant in *Sims*, however, is patently dissimilar to the value of the domains offered by defendants in the present case.  In *Sims*, the defendant offered evidence of the time and cost it would incur if had to audit bills and review phone records sought by plaintiffs' claims – evidence that very clearly related only to the defendants' cost of compliance.  *Id.* at 5.

settle this action in its entirety for the sum of $75,001, plus interests and costs. (Appendix pp. 3, 6-7)[3] The offer remained open for acceptance until the close of business on Friday, February 29. The letter stated that if no reply was received by that date, defendants would assume plaintiff rejected the settlement offer. Plaintiff acknowledged receipt of the letter, but never accepted the settlement offer. (Appendix pp. 3, 8)

A plaintiff's rejection of a settlement offer exceeding the jurisdictional amount is both admissible and compelling evidence of the amount in controversy. *See, e.g.*, *Rising-Moore*, 435 F.3d at 816 (Easterbrook, J.) (holding that rejected settlement offers were admissible under F.R.E. 408 to show that the "value of the object of the litigation" exceeded the diversity threshold because they were not used "to show either . . . liability or the 'invalidity' of [plaintiff's claim]. Instead, [they were used] to show the stakes, a question independent of the claim's merit."); *Savoy IBP 8, Ltd. v. Nucentrix Broadband Networks, Inc.*, 333 B.R. 114, 120 (N.D. Tex. 2005) (Solis, J.) (citing *Bhandari v. First Nat'l Bank of Commerce*, 808 F.2d 1082, 1103 (5th Cir. 1987)) (a trial court has broad discretion as to whether to admit evidence of settlement negotiations offered for another purpose, and "a decision to admit or exclude evidence proffered for other purposes will be reversed only for an abuse of that discretion"). Indeed, as this Court has noted, settlement offers "are compelling evidence of the minimum amount in controversy" and the amount in controversy will **exceed** the amount of rejected settlement offers. *Alms, Ltd., L.L.P. v. Barnes*, No. Civ. A 3:98-CV-1784-P, 1998 WL 907034 *2 (N.D. Tex. Dec. 16, 1998) (Solis, J.) (quoting *McCarnahan v. Southern Pac. R.R. Transp. Co.*, 914 F. Supp. 1430, 1431 n. 4 (E.D. Tex. 1995)).

---

[3] Defendants believed all costs totaled $345; however, if defendants overlooked any costs, the letter said defendants will add the costs to the settlement offer. *Id.* Therefore, defendants offered the total sum of $75,346 in exchange for a dismissal with prejudice (including all claims for injunctive relief, damages, and attorneys' fees).

4

Attorney's fees are yet another component of the amount in controversy about which plaintiff says nothing in its Motion to Remand. Plaintiff might have, but did not, disavow or cap its claim for attorneys' fees. The law is clear – and plaintiffs do not dispute – that attorneys' fees are to be considered in determining the jurisdictional amount in controversy. *See, e.g.*, *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (citing 14A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 3712, at 176 (2d ed. 1985) ("The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute.")). As proof of the possible amount of attorneys' fees at issue in the present case, defendants submit the declaration of Craig Weinlein, lead counsel for Minekey and Andra and a senior partner specializing in intellectual property litigation at Carrington, Coleman, Sloman & Blumenthal, LLP. (*See* Appendix at 3-5) Mr. Weinlein's declaration states that based on his years of experience litigating intellectual property cases in Dallas, Texas, in his opinion the attorneys' fees in this case for prosecuting plaintiff's claims through trial will exceed $75,000. (*Id.* at 5) By contrast, plaintiff's affidavit submitted in connection with its motion to remand tellingly avoids any mention of the amount of attorneys' fees that could be at issue in this case. Thus, the evidence regarding attorneys' fees in this case establishes that the amount in controversy exceeds $75,000. *See, e.g.*, *Maley v. Design Benefits Plan, Inc.*, 125 F.Supp.2d 197, 198-99 (E.D. Tex. 2000) (removal proper where no damages pled in petition, but full review of damages and attorneys' fees claims supported requisite amount in controversy).

**Federal Question Jurisdiction**

As explained in the Notice of Removal, plaintiff's original petition stated claims for trademark infringement and dilution under federal law, regardless of whether plaintiff intended to state such federal claims. Indeed, as also explained in the Notice of Removal, certain of

5

plaintiff's allegations (such as federal registration and alleged "fame" of plaintiff's mark) are relevant **only** to claims for infringement and dilution under **federal** law.

First, plaintiff specifically pleads that its service mark is "famous," but "fame" is not an element of the causes of action for dilution or infringement under Texas law. *See* TEX. BUS. & COM. CODE § 16.26 (Texas trademark infringement) and TEX. BUS. & COM. CODE § 16.29 (Texas anti-dilution act). Instead, "fame" is an element only for the cause of action for dilution **under federal law**. *See* 15 U.S.C. § 1125(c). Second, while Plaintiff argues that it brings its trademark claim solely under the laws of the State of Texas, plaintiff never alleges that defendants use any mark in Texas – a required element of the cause of action for Texas trademark infringement. *See* TEX. BUS. & COM. CODE § 16.26(a)(1). Third, Plaintiff's prayer for injunctive relief is similarly not limited to the State of Texas, but seeks interstate relief, which would implicate the interstate reach of the Lanham Act. The Texas statute authorizes a court to enjoin an infringement, but "infringement" is limited to "use in this state [Texas]." TEX. BUS. & COM. CODE § 16.26(a). Fourth, all three of plaintiff's demand letters attached to its petition state that Plaintiff intends to seek injunctive relief and damages under **both** federal law and Texas law in this action. (*See* Exhibits A6 and A8 to plaintiff's original petition)

Finally – and perhaps most tellingly – plaintiff's Motion to Remand does not disavow any intention to seek federal relief in the underlying lawsuit and does not disclaim any of its allegations that are consistent only with claims under federal law. Instead, plaintiff states only that it "does not rely on federal claims in seeking relief against Defendants and [its] causes of action . . . do not require interpretation of any federal statutes." (Plaintiff's Brief at 6) This assertion falls short of expressly **disclaiming** federal claims, especially in light of the allegations of the Original Petition. So long as such federal claims are inchoate in the Original Petition, and

6

are not expressly disclaimed, the Original Petition presents federal questions that independently justify the jurisdiction of this Court.

## **Conclusion**

Defendants Minekey, Inc. and Delip Andra request that plaintiff i.think inc's Motion to Remand be denied.

Respectfully Submitted,

*/s/ Craig W. Weinlein*
**Craig W. Weinlein**
  State Bar No. 21095500
**Barry R. Bel**l
  State Bar No. 02068550
**Prescott Smith**
  State Bar No. 24013534
**CARRINGTON, COLEMAN, SLOMAN &
  BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas  75202
Telephone:	(214) 855-3000
Facsimile:	(214) 855-1333

*Attorneys for Defendant Minekey, Inc.*

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record in the above cause in accordance with Rule 5, Federal Rules of Civil Procedure and Local Rule 5.1(d) on this 4th day of March, 2008.

*/s/ Craig W. Weinlein*